1
2
3
4
5
6
7
8
9
10              UNITED STATES DISTRICT COURT
11            SOUTHERN DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| ONA SMITH,<br><br>                         Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE<br>COMPANY, et al.,<br><br>                         Defendants. | Case No.:  18-cv-1463 JLS (WVG)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, INTEREST AND COSTS; (2) OVERRULING DEFENDANT'S EVIDENTIARY OBJECTIONS; (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S REQUESTS FOR JUDICIAL NOTICE; AND (4) GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**<br>(ECF No. 30) |

        Presently before the Court is Plaintiff Ona Smith's ("Plaintiff") Motion for Attorneys' Fees, Interest and Costs ("Mot.," ECF No. 30), as well as Defendant Aetna Life Insurance Company's ("Defendant") Opposition thereto ("Opp'n," ECF No. 33) and Plaintiff's Reply in support thereof ("Reply," ECF No. 38).  Also before the Court are Defendant's Evidentiary Objections to the Declarations of Nicolas West ("West Evid.

1

Objs.," ECF No. 34) and Robert J. McKennon ("McKennon Evid. Objs.," ECF No. 35) and Plaintiff's Response thereto ("Resp. to Evid. Objs.," ECF No. 38-1); Defendant's Request for Judicial Notice ("Def.'s RJN," ECF No. 36); and Plaintiff's Requests for Judicial Notice ("Pl.'s RJNs," ECF Nos. 30-20, & 38-6). The Court vacated the hearing on Plaintiff's Motion and took it under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 37.

Having carefully considered the underlying record, the Parties' arguments, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion, awarding $182,869.82 in fees ($178,562.25) and costs ($4,307.57) and denying pre-judgment interest. The Court further **OVERRULES** Defendant's Evidentiary Objections, **GRANTS IN PART AND DENIES IN PART** Plaintiff's Requests for Judicial Notice, and **GRANTS** Defendant's Request for Judicial Notice.

## BACKGROUND

On June 26, 2018, Plaintiff filed a Complaint pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1002 *et seq*., alleging that Defendant improperly terminated her disability benefits. *See generally* ECF No. 1. On January 7, 2019, the Parties appeared for an Early Neutral Evaluation and Case Management Conference before Magistrate Judge Gallo. *See* ECF No. 20. "At that time, the underlying claims had been resolved and all that remained was a dispute regarding attorney's fees." ECF No. 24 at 1–2.

On January 28, 2019, Defendant filed a motion to compel production of Plaintiff's fee agreement with her counsel. ECF No. 22. Plaintiff opposed. ECF No. 23. On March 25, 2019, Magistrate Judge Gallo issued an order denying Defendant's motion. ECF No. 24. Magistrate Judge Gallo found that controlling Ninth Circuit law prohibits a court from relying on a contingency fee agreement to increase or decrease the reasonable fees to be awarded on a motion for attorneys' fees. *Id.* at 3–4 (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2000)).

/ / /

On April 8, 2019, Defendant filed objections to Magistrate Judge Gallo's order denying its motion to compel.  ECF No. 25.  Following a full briefing of Defendant's objections, this Court issued an order finding Magistrate Judge Gallo's order neither clearly erroneous nor contrary to the law and overruling Defendant's objections.  ECF No. 29.

On September 9, 2019, Plaintiff filed the instant Motion.  ECF No. 30.

## LEGAL STANDARD

"In any [ERISA] action . . . by a participant, . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  "This fee award, however, applies solely to fees incurred in the judicial proceeding; fees incurred during 'the administrative phase of the claims process' are not recoverable under § 1132(g)."  *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1228 (9th Cir. 2020) (citations omitted).

"[A] fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (citation omitted).  If the party seeking a recovery of fees in an ERISA case has shown "some degree of success on the merits," the court considers five factors in deciding whether a fee award is appropriate:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all plan participants or resolve a significant legal question; and (5) the relative merits of the parties' positions.

*McElwaine v. US West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999).  These factors are often called the "*Hummell* factors," as they were first articulated in *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980).  In applying the *Hummell* factors, the court "must keep at the forefront ERISA's remedial purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans.'"  *McElwaine*, 176 F.3d at 1172 (citing *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir. 1983)).

3

If the court determines that it is appropriate to award fees, the court calculates a reasonable fee award using a two-step process. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992), factors that are not already subsumed in the initial lodestar calculation." *Fischer*, 214 F.3d at 1119 (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996)).

## ANALYSIS

## I.    Attorneys' Fees

Plaintiff requests attorneys' fees in the amount of $225,630, reflecting 405 hours of work completed through the preparation of the fee motion for a total of $203,730, plus an additional $21,900 for 47.60 hours of work completed since the filing of the Motion. Decl. of Robert J. McKennon in Support of Pl. Ona Smith's Mot. for Attorneys' Fees, Interest and Costs ("McKennon Decl.," ECF No. 30-5) ¶ 31; Supp. Decl. of Robert J. McKennon in Support of Pl. Ona Smith's Mot. for Attorneys' Fees, Interest and Costs ("Supp. McKennon Decl.," ECF No. 38-2) ¶ 7.[1]

As an initial matter, Defendants contend that Plaintiff is not entitled to fees at all. Opp'n at 6. However, to the extent the Court is inclined to award fees, Defendant counters that Plaintiff's counsels' hourly rates are unreasonable and the hours unreasonably expended. *Id.* at 9. Defendant argues that both the hourly rates and hours worked should be reduced drastically, resulting in a total fee award of $45,250. *Id.* at 25.

---

[1] Originally, Plaintiff had estimated that the fees for preparing her Reply would total $9,000, *see* Supp. McKennon Decl. ¶ 6, but Plaintiff provided an itemized list of actual hours worked as an exhibit thereto. *See id.* Ex. 16.

### A.      *"Some Degree of Success on the Merits"*

In order for Plaintiff to be entitled to fees, she must first establish that she has achieved "some degree of success on the merits." *See Hardt*, 560 U.S. at 255. Plaintiff argues that "[t]he fact that Aetna reinstated Smith's disability benefits because she filed suit and it did not want to face the trial that would occur unequivocally qualifies as 'some degree of success on the merits' under the Supreme Court's low threshold in *Hardt*." Mot. at 10. Defendant, on the other hand, argues that because it voluntarily reinstated Plaintiff's benefits, and therefore "Plaintiff did not even get any kind of determination on her claim from the Court," Plaintiff did not achieve "success on the merits." Opp'n at 6.

In essence, Plaintiff is asserting a "catalyst theory of success," *i.e.*, "that, for purposes of determining an award of attorneys' fees, a plaintiff prevails if he achieves the desired outcome of litigation even if it results from a voluntary change in the defendant's conduct." *Dmuchowsky v. Sky Chefs, Inc.*, No. 18CV01559HSGDMR, 2019 WL 1934480, at *3 (N.D. Cal. May 1, 2019), *amended*, 2019 WL 2612715 (June 26, 2019), *report and recommendation adopted*, 2019 WL 3037599 (July 11, 2019). Although the case law assessing whether a catalyst theory of success is viable in ERISA actions is somewhat mixed—*compare, e.g., Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 963 F. Supp. 2d 950, 963–66 (N.D. Cal. 2013) (applying catalyst theory in awarding fees in ERISA action), *Harrison v. Metro. Life Ins. Co.*, No. 13-CV-05585-VC, 2016 WL 4414851, at *1 (N.D. Cal. June 21, 2016) (same), *and Dmuchowsky*, 2019 WL 1934480, at *2–6 (same), *with Culbertson-Chavira v. Life Ins. Co. of N. Am.*, No. 2:17-CV-01702-JAM-AC, 2018 WL 3532907, at *1–4 (E.D. Cal. July 23, 2018) (refusing to award ERISA fees where Court had not issued any rulings on the merits)—the Court finds the reasoning of cases adopting the catalyst theory to be more persuasive and in-line with the spirit of ERISA.

Ultimately, Plaintiff obtained the very relief she sought in her Complaint, not merely "trivial success on the merits or a purely procedural victory." *Hardt*, 560 U.S. at 255 (internal citations and alterations omitted) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S.

680, 688 n.9 (1983)).  And it seems likely that Plaintiff's lawsuit was at least one factor that caused Defendant to reverse its denial of Plaintiff's benefits.  Accordingly, the Court finds Plaintiff has shown "some success on the merits."

### B.   The Hummell Factors

Because the Court finds that Plaintiff has shown "some success on the merits," the Court now analyzes the five *Hummell* factors to determine whether, in its discretion, it should award Plaintiff's fees.

#### 1.   Factor 1: Defendant's Culpability/Bad Faith

The first factor is Defendant's degree of "culpability or bad faith."  *McElwaine*, 176 F.3d at 1172.  Plaintiff argues that this factor weighs in favor of fees because Defendant "'cherry-picked' opinions from among its multiple experts . . . in order to dictate a 'not disabled' result; this constitutes culpable and bad-faith conduct."  Mot. at 13.  Furthermore, Plaintiff argues that the fact that Defendant "denied Smith's benefits incorrectly, as evidenced by the fact that it has now reinstated them," evidences Defendant's culpability.  *Id.*  Defendant, on the other hand, argues that this factor weighs against granting fees, because its initial denial of Plaintiff's benefits was made in good faith based on the information it had at the time.  Opp'n at 7.

Having considered the Parties' arguments and the limited evidence before it, the Court believes this factor weighs slightly against a fee award.  There is no evidence that Defendant denied Plaintiff's benefits in bad faith.  Moreover, while Defendant may have reversed its decision because it determined its denial of benefits to Plaintiff was wrongful, Defendant may have simply desired to avoid the cost of prolonged litigation.  Accordingly, the Court does not view Defendant's mere reversal of its initial position, made voluntarily before the Court issued any rulings on the merits concerning the wrongfulness of Defendant's behavior, to be definitive evidence of Defendant's culpability.  *See Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1188 (S.D. Cal. 2003) (finding first *Hummell* factor weighed against fee award where parties never litigated the merits of plaintiff's claim).

### 2. *Factor 2: Defendant's Ability to Satisfy a Fee Award*

The second factor is the degree to which Defendant would be able to pay an award of fees. *McElwaine*, 176 F.3d at 1172. Plaintiff asserts that "there is no reason to believe that Aetna cannot satisfy an award of attorneys' fees in this case because it is a huge insurance company," and that the Ninth Circuit has stated that "a court should accord great weight" to this factor. Mot. at 13 (citing *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 590 (9th Cir. 1984)). Defendant does not contest that it is capable of paying an award of fees, but does argue that this factor "is not decisive," particularly where "other factors . . . demonstrate such recovery would be inappropriate." Opp'n at 7.

While the Court agrees that "no one of the *Hummell* factors . . . is necessarily decisive," *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984) (citation omitted), the Court finds that this factor weighs heavily in favor of a fee award. The Ninth Circuit has stated: "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith*, 746 F.2d at 590. Defendant does not claim to be incapable of paying an award of fees and has raised no persuasive special circumstances here justifying a denial of Plaintiff's fee request.

### 3. *Factor 3: Deterrence of Others*

The third factor is whether an award of fees would deter similar misconduct by others. *McElwaine*, 176 F.3d at 1172. Plaintiff argues that awarding her full fees "would tend to deter Aetna, and other ERISA administrators, from similar poor conduct, such as improperly terminating disability benefits and then forcing the insured to pursue extensive litigation in order to secure the benefits." Mot. at 13–14. Defendant, on the other hand, argues that fees are not justified to deter future bad conduct, because there was substantial evidence to support its denial of Plaintiff's benefits in this case. Opp'n at 7.

As with the first factor, without the Court having made any legal conclusions on the merits that Defendant's initial denial of Plaintiff's benefits was wrongful, the Court is hesitant affirmatively to find that Defendant's initial denial constitutes misconduct that

requires deterrence in the future.  Accordingly, the Court concludes this factor is neutral.  *See Mogck*, 289 F. Supp. 2d at 1189.

### 4.      *Factor 4: Whether Plaintiff Sought to Benefit Others*

The fourth *Hummell* factor is "whether the parties requesting fees sought to benefit all plan participants or resolve a significant legal question."  *McElwaine*, 176 F.3d at 1172.  Plaintiff claims this factor supports her fee request, as "the result in this case will serve the purpose of benefitting all the participants of Pricesmart's employee benefit plan, as well as beneficiaries of other ERISA plans administered by Aetna," because "Aetna will presumably be more thorough in examining the claims before it."  Mot. at 14.  Defendant, on the other hand, claims this factor is inapplicable, as Plaintiff did not seek benefits for anyone other than herself in her lawsuit.  Opp'n at 7.

The Court agrees with Defendant that this factor is neutral.  Plaintiff only sought to challenge Defendant's adjudication of her own claim for benefits.  Accordingly, this factor weighs neither in favor of nor against awarding fees.  *See, e.g.*, *Fleming v. Kemper Nat. Servs., Inc.*, 373 F. Supp. 2d 1000, 1006 (N.D. Cal. 2005) (finding factor not to support fee award where "plaintiff sought only to obtain benefits for herself").

### 5.      *Factor 5: Relative Merits of the Parties' Positions*

The fifth and final factor is the relative merits of the Parties' positions.  *McElwaine*, 176 F.3d at 1172.  Plaintiff claims this factor also supports an award of fees because Defendant voluntarily decided to award Plaintiff the relief she sought, demonstrating the merit of Plaintiff's position.  Mot. at 14.  Defendant counters that its decision to deny benefits based on the information it had before it at the time had substantial merit.  Opp'n at 8.

The Court finds this factor supports an award of fees.  The Ninth Circuit has stated that the fifth factor "is, in the final analysis, the result obtained by the plaintiff."  *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 590 (9th Cir. 1984).  While it may be that Defendant's denial of Plaintiff's claim was supported by the evidence available to

/ / /

Defendant at the time, ultimately, Defendant voluntarily reversed its decision, suggesting that Defendant viewed the merits of Plaintiff's position to be stronger than its own.

### 6. Balancing

"The *Hummell* factors 'reflect a balancing' and not all factors need to weigh in favor of a fee award." *Mogck*, 289 F. Supp. 2d at 1188 (citing *McElwaine*, 176 F.3d at 1173). After balancing the *Hummell* factors and bearing in mind that the Ninth Circuit "ha[s] stressed that our application of the *Hummell* factors must recognize the remedial purpose of ERISA in favor of participants and beneficiaries," *Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234, 1239 (9th Cir. 2003), the Court finds it appropriate to exercise its discretion to award fees to Plaintiff in this case.

### C. Fee Calculation

Having determined that it is appropriate to award fees, the Court must now calculate the "lodestar figure" and assess whether to enhance or reduce it based on the circumstances of this case.

### 1. Reasonableness of Hourly Rates

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.2d 496, 500 (9th Cir. 1997)). "[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Id.* at 980 (second and third alterations in original) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). The Court may also consider cases setting reasonable rates during the time period in which the fees in the present action were incurred, *see*

*Camacho*, 523 F.3d 973, 981 (9th Cir. 2008) (citing *Bell v. Clackamas Cty.*, 341 F.3d 858, 869 (9th Cir. 2003)), which—in this case—is between 2017 and 2019. *See generally* McKennon Decl. Ex. 6; *see also Bell*, 341 F.3d at 869 (holding that district court abused its discretion in applying "market rates in effect more than two years *before* the work was performed") (emphasis in original). "Once the fee applicant has proffered such evidence, the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Cortes v. Metro Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

Plaintiff seeks hourly rates of (1) $700 per hour for Mr. Robert J. McKennon for his time before September 1, 2018, and $750 per hour thereafter; (2) $375 per hour for Mr. Nicolas A. West; and (3) $400 per hour for Mr. David S. Rankin for his time before May 24, 2018, and $450 per hour thereafter. Mot. at 21. Plaintiff argues that these rates are in line with the prevailing market rates for attorneys of similar experience and reflect the risk assumed and experience of her counsel. *Id.* (citing McKennon Decl. ¶¶ 12, 30).

It appears undisputed that Mr. McKennon is highly experienced in ERISA cases, having handled hundreds of ERISA cases in his more than 33 years as a practicing lawyer, and that he has received a fair amount of recognition for his work. Mot. at 22, McKennon Decl. ¶¶ 1–10. Plaintiff points to *Reddick v. Metropolitan Life Insurance Company*, Case No. 3:15-cv-02326-L-WVG, 2018 WL 637938 (S.D. Cal. Jan. 31, 2018), in which Judge Lorenz approved hourly rates of $700 for Mr. McKennon, as proof of the reasonableness of Mr. McKennon's hourly rates. Mot. at 23–24; McKennon Decl. ¶ 21.

Plaintiff also cites to numerous other cases in which courts have approved similar rates as reasonable, although these all appear to be cases in the Northern and Central Districts of California. *See* Mot. at 24–28; McKennon Decl. ¶¶ 14–20. However, "the relevant community is the Southern District of California because it is 'the forum in which the district court sits.'" *Joe Hand Promotions, Inc. v. Maldonado*, 2010 WL 3504858, at *1 (S.D. Cal. Sept. 3, 2010) (Sammartino, J.) (quoting *Camacho*, 523 F.3d at 979). / / /

Accordingly, the Court accords minimal weight to these authorities from outside the Southern District of California.[2]

Further, Plaintiff supports her fee request by claiming that Aetna and other insurance companies have agreed to pay her counsels' hourly rates pursuant to a number of settlement agreements entered into to resolve ERISA cases, all filed in the Central District of California.   Mot. at 25; McKennon Decl. ¶¶ 22–29.   Defendant argues that "[Mr. McKennon's] interpretation of settlement agreements not provided is not the best evidence of those written contracts," and that Defendant would be unable to respond to Defendant's statements without breaching confidentiality.   Opp'n at 13.   The Court agrees that Plaintiff's statements about fees purportedly paid as part of the settlement of litigation is evidence of limited probative value.   Much as, in patent cases, settlement agreements are generally viewed as having limited value in determining the reasonable royalty for a patent, given that other considerations, such as the desire to avoid further litigation, likely factor into the settlement sum—*see, e.g.*, *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 77–78 (Fed. Cir. 2012)—the Court finds that, even accepting that the insurers paid the McKennon firm's rates without objection as part of settlement agreements, that fact is not proof that those rates are the reasonable rates clients would necessarily pay for counsel's services, as other factors, like the desire to conclude the litigation, may have pushed those rates either upward or downward.   Thus, the Court accords limited weight to the rates purportedly paid to Plaintiff's counsel pursuant to settlement.

/ / /

---

[2] While Plaintiff argues for a "'national' rate for ERISA practitioners," citing an unpublished case from the Northern District of Iowa, McKennon Decl. ¶ 14, n.2 (citing *Torgeson v. Unum Life Ins. Co.*, No. C05-3052-MWB, 2007 WL 433540, at *6 (N.D. Iowa Feb. 5, 2007)), the Court is not convinced.   Although the Court recognizes that Mr. McKennon's practice may span cases in different jurisdictions, the fact is that many practitioners in a variety of practice areas represent clients in actions outside of the jurisdiction in which they are physically located.   Nonetheless, in the Ninth Circuit, the jurisdiction in which the action is brought is the standard by which reasonable rates are assessed, unless an exception to the general rule applies.   *Camacho*, 523 F.3d at 979.   This Court is not convinced, based on the evidence before it, that this case represents an exception to the general rule, and accordingly sees no principled reason to treat ERISA attorneys differently.

18-cv-1463 JLS (WVG)

Finally, Plaintiff relies on the declarations of Mr. McKennon, Mr. West, and several other attorneys to support the requested rates.  *See generally* McKennon Decl., West Decl.,[3] Decl. of Scott E. Calvert in Support of Mot. for Attorneys' Fees, Interest and Costs ("Calvert Decl.," ECF No. 30-19), Decl. of Glenn R. Kantor in Support of Pl.'s Mot. for Attorneys' Fees and Costs ("Kantor Decl.," ECF No. 30-21).[4]   Although the Court acknowledges that the declarations of Plaintiff's counsel and of other ERISA practitioners may be "self-serving and self-perpetuating," Opp'n at 14, the Court notes that its decision in *Kochenderfer v. Reliance Standard Life Insurance Company*, No. 06-CV-620 JLS(NLS), 2010 WL 1912867 (S.D. Cal. Apr. 21, 2010), cited by Defendant, *see* Opp'n at 14, is distinguishable, as it was issued during the height of an economic recession and major disruption of the legal market.  In general, the Court is inclined to find that "judicial standards—such as those embodied in Rule 11(b) of the Federal Rules of Civil Procedure—should mitigate the risks that attorneys will submit affidavits that attest to artificially high rates," particularly given that the Ninth Circuit has approved the use of such affidavits as satisfactory evidence to support a fee motion.  *Kroll v. Kaiser Found. Health Plan Long Term Disability Plan*, No. C 09-01404 LB, 2011 WL 13240371, at *7 (N.D. Cal. Aug. 25, 2011), *report and recommendation adopted*, No. C 09-01404 JSW, 2011 WL 13244861 (N.D. Cal. Oct. 26, 2011) (citing *Phelps Dodge Corp.*, 896 F.2d at 407).

---

[3] The Court notes that Defendant submitted Evidentiary Objections to both the declarations of Mr. West (ECF No. 34) and Mr. McKennon (ECF No. 35).  The Court has placed appropriate weight on the statements to which Defendant objects, as reflected throughout this Opinion.  Accordingly, the Court **OVERRULES** Defendant's Evidentiary Objections.

[4] Plaintiff requests that the Court take judicial notice of the Kantor Declaration.  *See* Pl.'s RJN (ECF No. 30-20) at 2.  "While . . . filings and orders in other court proceedings[] are judicially noticeable for certain purposes, such as to demonstrate the existence of other court proceedings, they are not judicially noticeable for [Plaintiff's] purpose, which is to demonstrate that his arguments and allegations against Defendant[] are true."  *Missud v. Nevada*, 861 F. Supp. 2d 1044, 1054 (N.D. Cal. 2012), *aff'd*, 520 F. App'x 534 (9th Cir. 2013) (citing Fed. R. Evid. 201).  Thus, while the Court **GRANTS** Plaintiff's Request for Judicial Notice, the Court only takes notice of the facts that the Kantor Declaration was filed in *Reddick v. Metropolitan Life Insurance Company*, Case No. 3:15-cv-02326-L-WVG, on June 22, 2017, and that it contains certain statements about attorneys' fees.  The Court declines to judicially notice the veracity of the statements contained within the Kantor Declaration, which Defendant contests.

Weighing all of the evidence submitted by Plaintiff, the Court finds that the $700 per hour fee for Mr. McKennon is reasonable in light of Mr. McKennon's undisputed experience, the Court's own knowledge of the rates in this District, the supporting declarations, and Judge Lorenz's decision in *Reddick*, *supra*. However, the Court is not inclined to grant the $50 per hour increase requested for all work completed by Mr. McKennon on or after September 1, 2018. The Court is perplexed by the fact that a rate increase is requested for Mr. Rankin as of May 24, 2018, and for Mr. McKennon as of September 1, 2018. The Court does not believe Plaintiff has carried her burden of establishing that such seemingly arbitrary fee increases would have been paid by clients in the relevant community during the relevant timeframe.[5]

The Court finds the supporting evidence for the requested rates for Messrs. West and Reddick to be less compelling, but ultimately, weighing all of the evidence, the Court finds $400 per hour for Mr. Rankin and $375 per hour for Mr. West to be at the upper limit of what a client would have paid during the relevant time in the Southern District of California, and therefore reasonable. During the relevant time frame, the only ERISA case in this District addressing the reasonableness of associates' hourly rates is *Reddick*, *supra*, in which Judge Lorenz approved a rate of $290 per hour, which was not contested. 2018 WL 637938, at *4. However, based on the supporting declarations and the Court's own knowledge of rates in this District, rates of $375 to $400 per hour do not appear to be unreasonable for associates with between two and ten years of legal experience during the relevant period. Again, however, the Court finds that Plaintiff has failed to offer sufficient

---

[5] Plaintiff argues that "Hartford, which is really Aetna via its 2017 acquisition of Aetna, conceded Mr. McKennon's hourly rate of $750 in *Ibarra* [*v. Hartford Life & Acc. Ins. Co.*, Case No. 8:19-cv-00333-DOC]," Reply at 4, and asks the Court to judicially notice Defendant Hartford Life and Accident Insurance Company's Opposition to Plaintiff's Motion for Attorneys' Fees and Costs in that matter. *See generally* Pl.'s RJN (ECF No. 38-6). The Court **DENIES** Plaintiff's Request for Judicial Notice as the Court is not convinced that Hartford's (assuming Aetna and Hartford really are the same entity—which Plaintiff does not establish) supposed non-opposition to Mr. McKennon's fees is "a fact that is not subject to reasonable dispute," Fed. R. Evid. 201(b), where Hartford strenuously objected to the fee request and decried "McKennon's self-proclaimed ERISA expertise, which he argues commands premium hourly rates of up to $750." *See* ECF No. 38-7 at 2.

evidence to justify the requested increase of $50 per hour for Mr. Rankin's time as of the seemingly arbitrary date of May 24, 2018.

Accordingly, the Court finds, in its discretion and based on the evidence offered by both Plaintiff and Defendant, that hourly rates of $700 for Mr. McKennon, $400 for Mr. Rankin, and $375 for Mr. West are reasonable for purposes of this Motion.[6]

## 2. *Reasonableness of the Hours Expended*

"The party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 434. "The district court . . . should exclude . . . hours that were not 'reasonably expended'" and "hours that are excessive, redundant, or otherwise unnecessary." *Id.* "[T]he [opposing party] bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath*, 67 F.3d at 255 (citing *Blum*, 465 U.S. at 892 n.5; *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995)). "Overlitigation deemed excessive does not count towards the reasonable time component of a lodestar calculation," *Puccio v. Love*, No. 16-CV-02890 W (BGS), 2020 WL 434481, at *6 (S.D. Cal. Jan. 28, 2020) (citing *Tomovich v. Wolpoff & Abramson, LLP*, No. 08cv1428-JM (BLM), 2009 WL 2447710, at *4–5 (S.D. Cal. Aug. 7, 2009)), although the Ninth Circuit has also instructed that, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Plaintiff claims that the hours worked were reasonable given the work necessary to litigate the case, including:

> investigat[ing] the facts; review[ing] Aetna's large, 2,300-page administrative record multiple times at different stages of the

---

[6] Defendant argues that Plaintiff's contingency fee arrangement with her counsel, evidenced by a time entry referencing a "35% offset," "inflates" counsels' requested rates. Opp'n at 12–13 (citing McKennon Decl. Ex. 6 at 9). However, given the prior orders by both Magistrate Judge Gallo (ECF No. 24) and this Court (ECF No. 29) finding consideration of the contingency fee agreement improper in this case and denying discovery of the same, the Court declines to consider this time entry (which, at any rate, is not clear on its face) in determining whether counsels' requested rates are "inflated."

litigation; obtain[ing] and evaluat[ing] Smith's client documents; perform[ing] legal and Web research; prepar[ing] a detailed 60-page Complaint early in the litigation that allowed counsel to draft the mediation briefs more efficiently and put Aetna on notice that Smith had a strong case; attend[ing] the Scheduling Conference; prepar[ing] a mediation brief and attend[ing] a mediation in San Diego; prepar[ing] an ENE conference statement and attend[ing] an ENE conference in San Diego; valu[ing] damages (multiple times); prepar[ing] a detailed settlement demand; engag[ing] in protracted settlement negotiations; prepar[ing] multiple oppositions to Aetna's attempts to obtain a copy of Smith's fee agreement; successfully challeng[ing] Aetna's improper attempts to offset portions of Smith's worker's compensation payments from her benefits; and this motion for attorneys' fees and costs, among numerous other tasks.

Mot. at 16–17 (citing McKennon Decl. ¶¶ 31–32 & Ex. 6). Defendant, on the other hand, strongly disputes the reasonableness of the hours spent on this case on a multitude of grounds.

First, Defendant argues the hours are unreasonable for a case that "resolved in the formative stage of litigation," "just three months after Aetna filed its answer." Opp'n at 1. The Court is admittedly skeptical of the number of hours expended in a case in which only matters related to attorneys' fees were ever briefed in court, and in which the only court appearance was for an Early Neutral Evaluation Conference focused on the fee issues. *See generally* Docket. However, the Court addresses this issue *infra* at 19–21.

Second, Defendant claims that the hours expended in each of five phases of the litigation, as identified by Defendant, are excessive for various reasons. For example, Defendant claims that all 65.9 hours billed from December 11, 2017, through March 29, 2018, are unrecoverable because that work was performed in the "Administrative Phase" of the case. Opp'n at 16–18. Plaintiff counters that this work "was part of getting ready to file the litigation," and that Defendant, who refused to consider the documents submitted on the ground that the administrative phase was closed, "cannot have it both ways." Reply at 7–8. It is well established that "ERISA does not 'allow[ ] for attorneys' fees for the

administrative phase of the claims process.'" *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 987 (9th Cir. 2001) (citation omitted).  However, having reviewed the March 21, 2018 letter from Plaintiff's counsel to Defendant, *see* ECF No. 30-16, the Court finds Plaintiff's position that this letter was part of the litigation, rather than a continuation of the administrative process, to be persuasive, and accordingly finds that Defendant has not met its burden of proving the unreasonableness of those hours.  The letter is essentially a demand letter, stating, "should Aetna decide to maintain its position, . . . we will immediately file litigation against Aetna on Ms. Smith's behalf." *Id.* at 13.  Accordingly, the Court is not of the view that the hours spent reviewing the Administrative Record, preparing the demand letter, and preparing the supporting documents thereto are unrecoverable as part of the "administrative phase."

Defendant argues that Plaintiff's hours on nearly all other tasks—including re-reviews of the Administrative Record, drafting of the Complaint, drafting of the various motions related to fees, and preparation for the mediation and Early Neutral Evaluation Conference—through the other four "phases" of the litigation are also excessive.  Opp'n at 18–23.  Having reviewed the detailed time records submitted with Mr. McKennon's Declaration, *see generally* McKennon Decl. Ex. 6, the Court does not believe Defendant has adequately supported its claim that counsels' hours are unreasonable.  Given that the Administrative Record spanned nearly 2,300 pages, 73.1 hours spent reviewing that voluminous Record, approximately 30 hours spent preparing a 60-page Complaint, and 50.2 hours spent preparing for mediation is not per se unreasonable.  However, the Court does agree that the hours expended by Plaintiff's counsel on joint motions prepared by Defendant are unreasonable.  As requested by Defendant, the Court reduces the 2.7 hours devoted to joint motions to extend the time to respond to the Complaint to 0.5 hours (from 0.7 to 0.1 hours for Mr. McKennon and from 2.0 to 0.4 for Mr. Rankin) and the 3.3 hours devoted to issues concerning the joint motion to continue the Early Neutral Evaluation Conference to 0.5 hours (from 1.5 to 0.2 hours for Mr. McKennon and from 1.8 to 0.3 hours for Mr. Rankin).  *See* Opp'n at 19; Decl. of Karen T. Tsui in Support of Def. Aetna's

Opp'n to Pl.'s Mot. for Attorneys' Fees and Costs ("Tsui Decl.," ECF No. 33-1) Exs. 17 & 22.

Third, Defendant argues that time entries for timekeepers not specifically identified and justified in the Motion should be stricken. Opp'n at 12. The Court agrees. While it seems clear "AFF" is a paralegal or other support staff based on the rate of $120 per hour, Plaintiff did not provide any evidence to support the reasonableness of "AFF's" rate or hours spent on this matter, even on reply. Accordingly, the Court declines to award 15 hours, totaling $1,800, for "AFF's" work in this case. Similarly, "RRT" billed 0.9 hours at $375 per hour on a letter concerning attorneys' fees in the case. Since, again, Plaintiff presented no evidence to support the reasonableness of this fee or the hours expended by "RRT," the Court declines to award the requested $337.50 for this particular timekeeper.

Fourth, Defendant argues that Plaintiff has block-billed, particularly with regard to preparation of the instant Motion and its supporting documents, and that this has made it "impossible for [Defendant] to determine how much time was spent preparing Mr. McKennon's declaration." Opp'n at 23. Although it is true that most of the time entries for the instant Motion are for the "motion . . . and supporting documents," *see generally* McKennon Decl. Ex. 6, the Court does not find this objectionable, especially as Defendant argues that significant portions of both the Motion and Mr. McKennon's declaration were recycled from prior court submissions, making distinguishing between the two unnecessary for purposes of Defendant's argument. The Court does not find that Defendant has established that Plaintiff block-billed in an unreasonable way.

Finally, Defendant takes issue with Plaintiff "preemptively demand[ing] $9,000 for a reply brief that has not even been written yet," as "[a]nticipated time is . . . not actual time." Opp'n at 23. Defendant cites to *GemCap Lending I, LLC v. Unity Bank Minn.*, No. 18-CV-05979-YGR, 2019 WL 3842010 (N.D. Cal. Aug. 15, 2019), in support of this argument. However, *GemCap* is inapposite, as there, "Hower's counsel only *estimated* the hours they would spend on the reply, and never supplemented the record to substantiate the actual hours." *Id.* at *4 (emphasis in original). Here, Plaintiff submitted both the

Supplemental McKennon Declaration and an exhibit thereto, *see* ECF No. 38-5, containing the time records themselves, which show that the McKennon Law Group PC spent 47.6 hours, for a total of $21,900, on the reply brief for this Motion.  The Supplemental McKennon Declaration explains this significant increase between the estimate and the actual hours expended as follows: "In light of Aetna's submission of 432 pages in support of its Opposition pleadings, including substantial objections to the evidence in support of the Motion, numerous exhibits, [and] a 25 page legal memorandum, we underestimated the amount of time it would take to respond to Aetna's submission."  Supp. McKennon Decl. ¶ 6.  The Court finds the initial 20 hours estimated reasonable, but declines to award the additional $12,900 requested for the reply brief.  *See Mogck*, 289 F. Supp. 2d at 1194 (internal citations omitted) ("With respect to the time spent by Plaintiff's counsel on preparation of the reply brief for the instant motion, the initial eight hours estimated by Plaintiff's counsel appears reasonable to the Court.  The Court disagrees, however, with Horner's argument that her work in preparing a reply brief was 'increased due to the nature of the type of Opposition' received, and thus declines Plaintiff's request for additional fees for approximately two days' work.").  Plaintiff's experienced counsel should have been able to accurately estimate the likely complexity of Defendant's Opposition and the time required to respond to it.

Accordingly, the Court finds minor adjustments to the hours expended to be required, but largely finds that the hours expended were reasonable for purposes of calculating the lodestar.

### 3.   *Lodestar Summary*

In short, the Court finds hourly rates of $375 per hour for Mr. West, $400 per hour for Mr. Rankin, and $700 per hour for Mr. McKennon reasonable.

Plaintiff appears to claim 123.5 hours worked by Mr. West, 127.0 hours worked by Mr. Rankin, 135.8 hours worked for Mr. McKennon, and 15.9 hours worked by two other timekeepers.  *See generally* McKennon Decl. Ex. 6.  Because Plaintiff provides no support regarding the 15.9 hours worked by unidentified timekeepers, the Court declines to award

those fees.  The Court also reduces Mr. Rankin's time by 3.1 hours and Mr. McKennon's time by 1.9 hours to make the hours expended on joint motions drafted by Defendant reasonable.  Finally, the Court approves 16 hours of Mr. West's time and 4 hours of Mr. McKennon's time spent drafting the reply brief.

Accordingly, the Court calculates the lodestar as follows:

| Attorney | Reasonable Hours | Reasonable Rate | Total |
|---|---|---|---|
| Mr. McKennon | 137.9 | $700 | $96,530.00 |
| Mr. Rankin | 123.9 | $400 | $49,560.00 |
| Mr. West | 139.5 | $375 | $52,312.50 |
| **Total** | **401.3** | | **$198,402.50** |

### 4.  Fee Calculation

"[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr* . . . ."  *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *D'Emmanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990), *overruled on other grounds by* <u>Dague</u>, 505 U.S. 557). The *Kerr* factors are:

> (1) the time and labor required[;] (2) the novelty and difficulty of the questions involved[;] (3) the skill requisite to perform the legal service properly[;] (4) the preclusion of other employment by the attorney due to acceptance of the case[;] (5) the customary fee[;] (6) whether the fee is fixed or contingent[;] (7) time limitations imposed by the client or the circumstances[;] (8) the amount involved and the results obtained[;] (9) the experience, reputation, and ability of the attorneys[;] (10) the 'undesirability' of the case[;] (11) the nature and length of the professional relationship with the client[;] and (12) awards in similar cases.

526 F.2d at 70. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel Corp.*, 6 F.3d at 622 (citing *D'Emanuele*, 904

F.3d at 1383).  While the court may rely on any of these factors to increase or decrease the lodestar figure, there is a "'strong presumption' that the lodestar is the reasonable fee." *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009) (quoting *City of Burlington*, 505 U.S. at 562); *accord Harman v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 407, 416 (2007).

Defendant does not explicitly seek any adjustment to Plaintiff's counsels' fees based on the *Kerr* factors.  Nonetheless, Defendant does argue that the requested sum is "exorbitant" given that the case "resolved in the formative stage of litigation," Opp'n at 1; that this was "a garden-variety ERISA case that did not even make it to trial briefing," *id.* at 4; and that counsel "cut-and-paste a significant majority of the subject fee motion and supporting declaration from other cases,"[7] Opp'n at 5, Tsui Decl. Exs. 30–34, and copy-and-pasted significant passages in the Complaint from letters to Defendant dated September 7, 2017, and March 21, 2018, Opp'n at 4–5, Tsui Decl. Exs. 3–5.

The Court finds that Defendant's arguments have merit.  Although Plaintiff's counsel had to review a voluminous Administrative Record, the only filing in this case to address the merits was the Complaint (itself largely recycled from prior letters), and the instant Motion was relatively uncomplicated and modeled on fee requests previously made by Plaintiff's counsel.  Accordingly, the Court believes a reduction of 10% to the requested fees is appropriate in light of the *Kerr* factors, particularly the lack of novel or difficult issues in the case.  *See Moreno*, 534 F.3d at 1112 ("The district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation"); *see also Klein v. Gordon*, No. 8:17-cv-00123-AB (JPRx), 2019 WL 1751839, at *4 (C.D. Cal. Feb. 12, 2019) (exercising discretion to impose a ten percent "haircut" reduction for clerical work, conferences calls, conversations

---

[7] Defendant requests the Court take judicial notice of three prior fee motions filed by the McKennon Group in other cases.  *See generally* Def.'s RJN, Tsui Decl. Exs. 30–32.  Because Defendant does not ask the Court to accept the truth of the statements within those court filings, but only to acknowledge the existence of certain language therein, which is not subject to dispute, the Court **GRANTS** Defendant's Request for Judicial Notice.

amongst co-counsel, and preparation of submissions); *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1008 (N.D. Cal. 2012) (reducing the plaintiff's lodestar amount by ten percent after factoring in all of the other deductions); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1173 (C.D. Cal. 2010) (reducing the plaintiff's final fees with a ten percent "haircut" to the lodestar amount, taking into account the defendant's objections regarding excessive hours and rates).

Thus, having considered the *Kerr* factors, the Court concludes in its discretion that the lodestar amount of $198,402.50 should be reduced by ten percent to account for the relative simplicity of the underlying proceedings.  The Court therefore reduces the lodestar figure by $19,840.25 to $178,562.25.

## II.   Costs

"A prevailing ERISA Plaintiff is entitled to the categories of costs enumerated under 28 U.S.C. § 1920 as well as reasonable out of pocket litigation expenses that lawyers in the community typically bill to clients separately from their hourly rates."  *Reddick*, 2018 WL 637938, at \*5 (citing *Trustees of Constr. Ind. & Laborers Health & Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1258 (9th Cir. 2006)).

Plaintiff requests costs totaling $4,307.57, including $400 of filing fees as well as more than $3,900 in other costs such as "travel, postage, service/messenger fees, copying, phone, fax, and electronic research."  Mot. at 28–29.  Defendant argues that only the $400 in filing fees are recoverable, as Plaintiff's counsel "has not submitted evidence showing that billing plaintiffs for these other costs is the custom and practice of the ERISA practitioner community."  Opp'n at 24.

Mr. McKennon's statement that it is customary in this region for attorneys to charge such expenses to paying clients separate from their hourly rates, *see* McKennon Decl. ¶ 46, is consistent with the Court's experience, as well as prior orders in this District addressing the issue of awardable non-statutory costs.  *See, e.g.*, *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 317CV00466LABNLS, 2018 WL 2948532, at \*2 (S.D. Cal. June 12, 2018), *report and recommendation adopted*, No. 17CV466-LAB (NLS), 2018 WL

3032585 (S.D. Cal. June 19, 2018) ("Copy, courier, and legal research fees have been awarded by the Ninth Circuit.") (citations omitted); *Thalheimer v. City of San Diego*, No. 09CV2862-IEG BGS, 2012 WL 1463635, at *9 (S.D. Cal. Apr. 26, 2012) (awarding costs for "telephone charges, copies, filing fees, courier and mailing fees, and internet research"); *Ford v. CEC Entm't Inc.*, No. 14CV677 JLS (JLB), 2015 WL 11439033, at *6 (S.D. Cal. Dec. 14, 2015) (Sammartino, J.) (finding costs such as "court fees, court reporter charges, delivery and messenger charges, investigators, and travel expenses" would be billed separately from hourly fees and awarding requested $7,888.92); *Matlink, Inc. v. Home Depot U.S.A., Inc.*, No. 07CV1994-DMS BLM, 2008 WL 8504767, at *6-7 (S.D. Cal. Oct. 27, 2008) (allowing delivery fees and electronic research costs as expenses recoverable on attorneys' fees motion); *see also In re PETCO Corp. Sec. Litig.*, No. 05-CV-0823 H (RBB), 2008 WL 11508458, at *4 (S.D. Cal. Sept. 2, 2008) (finding mediation costs to be "the type of costs typically billed by attorneys to fee paying clients in the marketplace").

Accordingly, the Court finds the $4,307.57 in costs included by Plaintiff as part of her fee request reasonable.  Further, given that these costs are not affected by the *Kerr* factors the Court found to justify a reduction of the lodestar figure, the Court does not apply the ten percent reduction to these costs.

## III.   Pre-Judgment Interest

Finally, Plaintiff requests prejudgment interest on her ERISA benefits, at the post-judgment interest rate, pursuant to *Blankenship v. Liberty Life Assurance Co. of Bos.*, 486 F.3d 620, 627 (9th Cir. 2007).  Mot. at 29−30.  Defendant argues that, because Plaintiff did not win a court award of her past benefits, which Defendant voluntarily paid in December 2018, Plaintiff should not be awarded pre-judgment interest.  Opp'n at 24−25.

The Court agrees with Defendant that the equities here do not warrant an award of pre-judgment interest.  "Whether interest will be awarded [in an ERISA case] is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities."  *Day v. AT & T Disability Income Plan*, 608 F. App'x 454, 458 (9th Cir. 2015) (quoting *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan,* 750 F.2d

1458, 1465 (9th Cir.1985)) (internal quotation marks omitted).  Plaintiff did not obtain a ruling on the merits from this, or any other, Court, ordering Defendant to pay the denied benefits.  Rather, Defendant voluntarily reversed its denial decision.  Accordingly, the Court, in its discretion, finds that the equities weigh against an award of pre-judgment interest to Plaintiff on her ERISA benefits.  *See id.* at 459 (upholding district court's decision to award pre-judgment interest on STD benefits, which were awarded by the district court, but not LTD benefits, on which the plaintiff never obtained any favorable court order).

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion, awarding $182,869.82 in fees ($178,562.25) and costs ($4,307.57) and denying pre-judgment interest.  The Court further **OVERRULES** Defendant's Evidentiary Objections, **GRANTS IN PART AND DENIES IN PART** Plaintiff's Requests for Judicial Notice, and **GRANTS** Defendant's Request for Judicial Notice.

**IT IS SO ORDERED.**

Dated:  October 14, 2020

Hon. Janis L. Sammartino
United States District Judge